IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAMARA, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| WESTFIELD INSURANCE CO., et al. | : | NO. 13-7086 |

MEMORANDUM

Dalzell, J.                                                                                     March 10, 2014

## I.      Introduction

Ramara, Inc. ("Ramara") brings this action for declaratory judgment and breach of contract against Westfield Insurance Company, and Ramara names Fortress Steel Service, Inc. ("Fortress"), Sentry Builders Corp. ("Sentry"), and Anthony Axe ("Axe") as additional defendants "only to the extent that they may have an interest in Ramara's claim and may be considered indispensable parties", Ramara Comp. ¶ 8.  Ramara seeks a declaration that it is an additional insured under an insurance policy Westfield issued to Fortress, and, as such, that Westfield must defend and/or indemnify Ramara in a personal injury suit Axe has brought against Ramara, see Ramara Comp. ¶¶ 2-3.

Westfield removed this action on December 3, 2013, Ramara moved to remand on December 12, 2013, and we denied that motion on January 2, 2014.  Defendants Westfield Insurance Company and Fortress (collectively, "Westfield") now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that "Ramara is not entitled to coverage under the Policy for purposes of the claims presented in the [Axe] Action, and exclusions contained in the Policy otherwise preclude coverage", Def. MTD at ¶ 28.

As we explained in our lengthy jurisdictional discussion when denying Ramara's motion to remand, we exercise jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441 because Ramara is a citizen of Pennsylvania and, after realigning Axe as a plaintiff, all defendants are citizens of states other than Pennsylvania as we held in our January 2, 2014 Order.  See id. at ¶¶ (ff) - (nn).

## II.    Standard of Review

A defendant moving to dismiss under Fed. R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief, see Fed. R. Civ. P. 12(b)(6); see also, e.g., Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005).  As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) and Ashcroft v. Iqbal, 556 U.S. 662 (2009), in order to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'", Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", Iqbal, 556 U.S. at 678.

As our Court of Appeals has explained post-Twombly and Iqbal, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) the district courts must engage in a two-part analysis:

> First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

We thus begin by reciting the facts as they appear in Ramara's second amended complaint (hereinafter "Ramara Comp.").

**III.**   **Facts**

According to Ramara's complaint, Fortress entered into a Letter Agreement ("the Agreement") with Sentry on February 22, 2012 in which Fortress agreed to supply and install concrete and steel components for a parking garage Ramara owned on City Avenue in Philadelphia, Pennsylvania.  Ramara Comp. at ¶¶ 7, 11.  Sentry appears to have been the general contractor.

Fortress agreed to provide "all necessary labor [and materials] required to perform the work in a workman-like manner and in accordance with the acceptable standard of the trade", id. at ¶ 13 (quoting the Agreement, Ramara Comp. Ex. B at 3).  Fortress was also to provide "all necessary supervision until the project is completed", id. at ¶ 14 (quoting the Agreement at 3). The Agreement provided that "Sentry Builders Corporation and or Ramara, Inc. will NOT be responsible for the procedures or actions of Fortress Steel in its performance or deliveries to complete the work."  Id. at ¶ 16 (quoting the Agreement at 3).

Under the Agreement, Fortress was to provide Sentry a certificate for Workmen's Compensation and General Liability insurance naming Sentry and Ramara as additional insureds, id. at ¶ 17, and Fortress provided a certificate "showing Fortress Steel as the named insured under a Westfield Insurance Group policy" and providing that "Additional Insureds include Ramara, Inc. and Sentry Builders . . . .", id. at ¶ 18 (quoting Certificate of Liability Insurance,

Ramara Comp. Ex. C)[1].

With regard to the insurance agreement between Westfield and Fortress Steel, Ramara avers that "Westfield issued a Commercial Insurance Coverage Policy ["the Policy"] to Fortress Steel effective November 21, 2011 to November 21, 2012", id. at ¶ 19, and "[t]he General Liability Declarations page of the Commercial Insurance Coverage policy issued by Westfield to Fortress Steel indicates $1 million per occurrence and $2 million aggregate general liability limits." Id. at ¶ 26. The Policy provides,

> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages . . .
>
> . . .
>
> b.     This insurance applies to 'bodily injury' and 'property damage' only if:
>
> > (1)     The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory;'
> >
> > (2)     The 'bodily injury' or 'property damage' occurs during the policy period . . . .

Policy Form CG 0001, Def. MTD Ex. D, at 1.

The Policy also contains an "Employer's Liability" exclusion that holds coverage does not apply in the case of "'Bodily injury' to: (1) An 'employee' of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business . . .", id. at 2, but this exclusion does not apply "to liability

---

[1] The plaintiff did not label any exhibits attached to the complaint. Our references to exhibits by letter follow the plaintiff's references in the complaint and the sequential order of the unlabeled documents attached thereto. The plaintiff also did not bother to cite to specific pages in the insurance contract. Where it is not possible to identify a page to which plaintiff refers, we cite only to the plaintiff's complaint.

4

assumed by the insured under an 'insured contract.'"  Id.  An "insured contract" is, in relevant

part, a contract whereby the insured "assume[s] the tort liability of another party to pay for

'bodily injury' or 'property damage' to a third person or organization, provided the 'bodily

injury' or 'property damage' is caused, in whole or in part, by you or by those acting on your

behalf."  Policy Form CG 2426, Def. MTD Ex. D.

>With regard to the additional insureds, the Policy provides that

>A.      Section II -- Who Is An Insured is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for 'bodily injury', 'property damage', or 'personal and advertising injury' caused, in whole or in part, by:

>>1.      Your acts or omissions; or

>>2.      The acts or omissions of those acting on your behalf;

>in the performance of your ongoing operations for the additional insured.

>A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

See Policy Form CG 2033, Def. MTD Ex. D.

>The Policy also provides umbrella coverage with a limit of $9 million per

occurrence, see Ramara Comp. at ¶ 30; Def. MTD at ¶ 20.

>Axe sued both Ramara and Sentry -- but not Fortress -- for negligence, alleging

that on April 4, 2012[2], while he was working for Fortress at the parking garage Ramara owns, he

---

[2] Ramara alleges in its complaint that Axe sued it "in connection with an incident that occurred on April 12, 2012" at the parking garage.  Ramara Comp. at ¶ 7.  There is no mention of this date in the copy of Axe's complaint attached to Ramara's complaint.

was "severely injured when he fell through an opening in the garage deck while he was attempting to set beam clips", Axe Comp., Ramara Comp. Ex. A, at ¶ 20, and that he was required to access the garage deck "[a]s part of [his] normal duties on the job site".  Ramara Comp. Ex. A at ¶ 19.

Axe alleges that Fortress was an independent contractor of Sentry and that Sentry and Ramara were "acting by and through [their] agents, servants and/or employees who were acting within the course and scope of their agency, service and/or employment . . . ."  Axe Comp. ¶¶ 3, 6, 14.  According to Axe's complaint, "Defendants employed and/or retained, or were obligated to employ field personnel, project supervisors and safety inspectors to inspect the work being performed and the equipment and materials utilized by contractors and subcontractors at the project", and the defendants "did not provide a safe work environment . . . by failing to adequately inspect and monitor the work performed and by failing to provide and require that equipment be used in accordance with industry standards." Id. at ¶¶ 21-22.  Axe avers that he suffered permanent and disabling injuries "[a]s a direct result of defendants' conduct . . . ." Id. at ¶ 23.

Ramara alleges that it informed Westfield of the Axe suit in a February 4, 2013 letter, and that Westfield responded on March 14, 2013 saying that it would "den[y] coverage to your clients for defense and indemnity."  Ramara Comp. ¶¶ 36-37.  Ramara allegedly renewed its request on April 3, 2013, asking Westfield to reconsider its denial of defense and indemnity. Counsel for Westfield replied on April 24, 2013 saying, "my client has directed me to advise you that no coverage is available for the reasons set forth in our prior correspondence." Id. at ¶¶ 38-39.

Westfield's motion to dismiss relies on the argument that it has no duty to defend.

**IV.**     **Discussion**

     A.     Ramara Has Stated a Claim That It Qualifies as an Additional
            Insured Under the Policy for Purposes of the Underlying Action

        In its motion to dismiss Westfield argues that Ramara does not qualify as an additional insured under the policy with respect to the claims in Axe's suit.  Def. MTD at 7. Westfield notes that the Policy limits coverage for an additional insured to bodily injury, property damage, and personal and advertising injury <u>caused by</u> Fortress or those acting on its behalf.  <u>Id.</u>  According to Westfield, under Pennsylvania law this "caused by" language "requires a showing that the named insured's acts or omissions 'was a proximate cause' of plaintiff's injuries in order to trigger this coverage."  <u>Id.</u> (citing <u>Dale Corp. v. Cumberland Mut. Fire Ins. Co.</u>, No. 09-1115, 2010 WL 4909600 (E.D. Pa. Nov. 30, 2010) (O'Neill, J.)).  Westfield's contention is that since "the Underlying Complaint does not contain any allegations that Fortress caused plaintiff's injuries, then no additional insured coverage is available under this endorsement."  <u>Id.</u> at 8.

        Ramara counters that it qualifies as an additional insured because: (1) other courts have construed the "caused by" language in such agreements to require a showing not of proximate cause but only of actual or "but for" cause, Pl. Resp. at 8; (2) this less restrictive causation language is "consistent with other provisions of the policy" (specifically, the "other insured endorsement"), <u>id.</u> at 10; (3) <u>Dale</u> is inapposite because the named insured in this case, Fortress, was Axe's employer and so Axe could not name Fortress in the complaint "due to the immunity conferred by the Workmen's Compensation Act", <u>id.</u> at 12; and (4) the Axe complaint relies on a theory of vicarious liability that implies that Fortress caused Axe's injuries, <u>id.</u> at 15-16.

Although Westfield frames the question here as whether Ramara constituted an additional insured for purposes of the underlying claim, the Policy's definition of an "additional insured" is co-extensive with Westfield's duty to defend and thus the real question is whether Axe's complaint triggers that duty.

Under Pennsylvania law[3], "when a provision in [an insurance] policy is ambiguous, the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006) (internal quotations omitted).

The duty to defend in Pennsylvania arises when "a claim against the insured is potentially covered by the insurance policy", Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 533 (Pa. 2010) (emphasis added).  That is, the insurer must defend "if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy", id. at 541.  See also Erie Ins. Exch. V. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987) (the duty to defend arises "whenever the complaint filed by the injured party may potentially come within the coverage of the policy") (emphasis in original) (internal quotations omitted).  The Pennsylvania Supreme Court has emphasized that the duty is triggered even when it is unclear whether the policy covers the claim: "[a]s long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend." Am. & Foreign Ins. Co., 533 A.2d at 541 (quoting Casper v. Am. Guar. & Liab. Ins. Co., 184 A.2d 247, 248 (Pa. 1962)).

---

[3] Ramara argues that Pennsylvania law may not apply to the instant matter.  See Pl. Resp. at 20. Westfield, whose motion to dismiss relies upon Pennsylvania law, contends that "Ramara has not adequately raised any objection to the application of Pennsylvania law", Def. Reply at 2. Because we find that we must deny Westfield's motion to dismiss under Pennsylvania law, we will not conduct a choice of law analysis here.

Courts determine whether a policy potentially covers a claim by "comparing the four corners of the insurance contract to the four corners of the complaint", id., and "[a]n insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy", id.

As we rehearsed above, the contract provides insurance for a putative additional insured  within the following limit:

> Such person or organization is an additional insured only with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused, in whole or in part, by:
>
> 1.      Your acts or omissions; or
>
> 2.      The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.

See Policy Form CG 2033, Def. MTD Ex. D.  The dispute as to coverage turns first on the meaning of "caused, in whole or in part, by".  Westfield contends that this language requires "a showing that the named insured's acts or omissions 'was a proximate cause' of plaintiff's injuries in order to trigger this coverage.'"  Def. MTD at 7.

Ramara responds that the Policy requires that Fortress's acts or omissions need only be an actual or "but for" cause of Axe's injuries.

Pennsylvania courts have not spoken directly on this issue, but in our Court, in Dale, Judge O'Neill found that "the additional insured provision requires a showing that [the named insured]'s acts or omissions were a proximate cause of [the underlying complainant's] injuries in order to trigger the policy coverage", Dale, 2010 WL 4909600 at *7.  Following Am.

& Foreign Ins. Co., the facts Axe allege must show that Fortress's acts or omissions might

potentially have been a proximate cause of Axe's alleged injuries then the complaint would

trigger the duty to defend.  We will therefore first consider whether the complaint triggers the

duty to defend if we view the Policy as containing this more restrictive proximate cause

requirement without finding that the Policy contains this causation requirement.

   As courts in our district have recognized, "it is beyond dispute that under

Pennsylvania law causation involves two separate and distinct concepts, cause in fact and legal

(or proximate) cause", E.J. Stewart, Inc. v. Aitken Products, Inc., 607 F. Supp. 883, 888 (E.D.

Pa. 1985) (J. VanArtsdalen) (citing Whitner v. Lojeski, 263 A.2d 889 (Pa. 1970)).  As Judge

VanArtsdalen explained, "[l]egal or proximate causation involves a determination that the nexus

between the wrongful acts (or omissions) and the injury sustained is of such a nature that it is

socially and economically desirable to hold the wrongdoer liable", id. at 889, and "[t]he

articulated standard for determining legal or proximate cause is whether the alleged wrongful

acts were a substantial factor in bringing about the plaintiff's harm."  Id.  (citing Restatement

(Second) of Torts § 431 (1965); Whitner, 263 A.2d at 894) (emphasis added)).

   Whether conduct is a "substantial factor" turns on "whether the defendant's

conduct although a cause in the 'but for' sense is so insignificant that no ordinary mind would

think of it as a cause for which a defendant should be held responsible", Ford v. Jeffries, 379

A.2d 111, 114 (Pa. 1977).

   Westfield argues that Axe's allegations do not satisfy this requirement as to

Fortress's conduct because "the Underlying Complaint contains absolutely no factual allegations

directed against Fortress, except that it was Axe's employer", Def. MTD at 8.  Westfield cites

Dale in which Judge O'Neill considered an additional insured contract containing cognate

language and found that the named insured's actions were not a proximate cause of the injury the complaint sought to redress, and thus found that the complaint did not trigger the insurer's duty to defend the additional insured.

But the facts here differ from those in <u>Dale</u>, where Dale Corporation, a construction manager, hired Nesmith & Co., the named insured, as a subcontractor.  Nesmith's insurance policy contained the "additional insured" language described above under which Dale Corp. argued it was an additional insured entitled to the insurance company's defense.  The injury arose after Nesmith brought a Genie lift to the construction site to use in performing its duties and Robert Francis, an employee of another subcontractor, Chisom Electrical, used the Genie without Nesmith's permission or knowledge, and in so doing suffered severe burns from an overhead power line.  <u>Dale</u>, 2010 WL 4909600, at *2.  In the first suit Francis filed he named Dale Corp. -- but not Nesmith -- as a defendant, and the complaint did not make any reference to Nesmith at all.  <u>Id.</u> at *2; *7.  Judge O'Neill found that because the factual averments "did not in any way implicate Nesmith," <u>id.</u> at *7, the complaint did not give rise to a duty to defend Dale Corp., the additional insured.

Here, as Ramara notes, Axe "was an employee of Fortress and therefore could not name Fortress as a defendant in the Underlying Complaint, due to the immunity conferred by the Workmen's Compensation Act."  Ramara Resp. at 12.  Unlike the <u>Dale</u> plaintiff, Axe alleges he was working for Fortress at the time of the accident and that Ramara was acting "by and through its agents, servants and/or employees", Axe Comp. at ¶ 3.  Axe alleges that in the course of his employment he accessed the garage roof deck, where he fell.  <u>Id.</u> at ¶¶ 14, 19-20.  Axe alleges that "[d]efendants employed and/or retained, or were obligated to employ field personnel, project

supervisors and safety inspectors to inspect the work being performed and the equipment and materials utilized by contractors and subcontractors at the project." Id. at ¶ 21.

Mindful of the pleading constraints the Workers' Compensation Act created, we consider other cases in which an employee of the named insured sued an additional insured -- but did not sue the named insured -- to determine whether such a suit might give rise to a duty to defend under the terms of the policy here.

In Dale, Judge O'Neill cited the Southern District of Texas decision in Gilbane Bldg. Co. v. Empire Steel Erectors, No. 08-1707, 2010 WL 707378 (S.D. Tex. Feb. 23, 2010), where the underlying complainant was also an employee of the named insured:

> the underlying plaintiff made no allegations in his complaint with respect to the named insured because the named insured was his employer and could not be held liable under the state workers' compensation laws. Nevertheless, the court found that the additional insured was entitled to a defense under the policy because it could not "say that [the underlying plaintiff] . . . acting on behalf of [the named insured] . . . in the course of his job, was not possibly a contributing, proximate cause of his injuries."

Dale, 2010 WL 4909600, at *7 (quoting Gilbane, 2010 WL 707378, at * 10). Judge O'Neill wrote Dale before the Fifth Circuit ultimately reversed and the Court of Appeals for the Fifth Circuit found that under Texas law a court considering an insurer's duty to defend could consider only "the facts alleged in the petition and the coverage provided in the policy." Gilbane Bldg. Co. v. Admiral Ins. Co., 664 F.3d 589, 596 (5th Cir. 2011). The plaintiff in Gilbane, unlike Axe, had alleged that his injury was caused by the additional insured alone in that the additional insured "failed to keep the construction site in a clean and functional condition" and "had actual notice of the danger", but despite this actual knowledge, "took no action to correct the problem, and as a result, Plaintiff slipped and fell causing his injuries . . . ." Id. at 598. Pennsylvania law

also limits our consideration to the four corners of the insurance policy and the four corners of the complaint, see Am. & Foreign Ins. Co., 533 A.2d at 541, but in contrast with the plaintiff in Gilbane, Axe explicitly alleges in his complaint that Sentry and Ramara caused his injuries "by and through its agents, servants and/or employees", Axe Comp. ¶ 3, and avers that Fortress was a subcontractor for Sentry.

 In Pro Con, Inc. v. Interstate Fire & Cas. Co., 794 F. Supp. 2d 242 (D. Me. 2011), Pro Con was a general contractor engaged to construct a hockey rink at Bowdoin College. Id. at 245. Pro Con contracted with one subcontractor, who in turn contracted with another subcontractor, CCS Constructors, LLC. CCS was the named insured on a policy that provided additional insured coverage to Pro Con under terms identical to those we consider here. Id. at 245 - 247. Stephen E. Williams, a CCS employee, "slipped and fell due to tarps covered with snow and the dangerous conditions at the Bowdoin College jobsite", id. at 257, and he sued Pro Con for the resulting injury. He did not name CCS in the complaint. Id. at 248.

 Nevertheless, the court found that Maine law -- like Pennsylvania law -- requires an insurer to defend "if there is any possibility that its policy might provide coverage." Id. at 257-58. The court also found that under Maine law, as under Pennsylvania law, courts must resolve that question "by comparing the complaint with the terms of the insurance contract." Id. at 253 (quoting Bucci v. Essex Ins. Co., 383 F.3d 285, 290 (1st Cir. 2005)). The court found that, according to the Complaint, "Pro Con was the general contractor at the Bowdoin College jobsite; that Williams was working at the Bowdoin College jobsite on the day of the accident; and that Williams was injured . . . in the course of his work", id. at 257. These allegations, it held, "clearly establish that the injury arose out of CCS's operations performed for Pro Con", and "[f]rom these allegations, there also is certainly the potential that facts might be developed at

trial that would result in the fact finder determining that Williams' bodily injuries were caused, at least in part by, the acts or omissions of CCS" and thus "these allegations are sufficient to trigger [the] duty to defend." Id. at 257-58.

Pro Con did not explicitly apply a proximate cause standard. Instead, it found that Maine law requires the phrase "arising out of" to be given "an expansive reading when it appears in an insurance policy", id. at 254 (quoting Wright-Ryan Construction, Inc. v. AIG Commercial Ins. Co. of Canada, No. 08-414-P-H, 2009 WL 4508443, at * 6 (D. Me. 2009)). Thus, Pro Con held that the language "plainly requires that there be some connection between the operations on behalf of the Additional Insured . . . and the Named Insured", id., and that the contract "intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured and the additional insured", id. at 257 (emphasis in original). Pro Con may allow a broader causal link between the named insured's conduct and the injury than does the proximate cause standard, and so this analysis guides but does not govern our consideration here.

Because Axe pled that (a) he was working for Fortress when he was injured and that he accessed the garage roof deck in the course of his employment, (b) Fortress was a contractor for Sentry, and (c) Ramara and Sentry acted by and through their agents, a consideration of the four corners of the complaint and the four corners of the Policy allows us to infer that it is possible that a jury could find that Fortress's conduct was not "so insignificant that no ordinary mind would think of it as a cause" of Axe's injury, and so Westfield has not met the burden on this ground of showing that Ramara has failed to state a claim to relief in seeking a declaration that Westfield has a duty to defend under Pennsylvania law and that Westfield's failure to defend constitutes a breach of contract.

14

B.     Coverage Is Not Precluded by the Employer's Liability Exclusion

Westfield next argues that even if Ramara is an additional insured, Westfield has no duty to defend because Axe's claims fall within the scope of the Policy's employer's liability exclusion.  Def. MTD at 8.

Ramara counters that under the separation of insureds provision we must consider solely the coverage of each insured as if no other insured exists, and, as such, the employer's liability exclusion applies only to the insured employer, and not to other additional insureds for whom the injured party did not directly work.  Pl. Resp. at 18-19.

In Pennsylvania Manufacturers' Ass'n Ins. Co. v. Aetna Cas. and Sur. Ins. Co., 233 A.2d 548 (Pa. 1967) ("PMA"), the Pennsylvania Supreme Court considered the applicability of an employer's liability exclusion for a party who did not employ the complainant and was not the named insured, but who received coverage under the named insured's policy pursuant to an "omnibus insured" provision.  Aetna argued that the exclusion did not apply to anyone other than the named insured's employees, and in doing so it relied on the "severability of interests" clause which provided that "the term 'the insured' is used severally and not collectively."  Id. at 550. The Pennsylvania Supreme Court found that notwithstanding the severability provision the exclusion applied to the non-employer additional insured.  Id.  As our Court of Appeals explained in Brown & Root Braun, Inc. v. Bogan, Inc., 54 Fed. Appx. 542 (3d Cir. 2002), the Pennsylvania Supreme Court in PMA concluded that "since the employee injury exclusion provision was written in express terms while the language of the severability of interests clause was ambiguous, the employee injury exclusion provision will control."  Id. at 548 (citing PMA, 233 A.2d at 552).

In <u>Brown & Root Braun</u>, our Court of Appeals considered a situation similar to the one before us here: an additional insured sought coverage under a policy containing both an employee exclusion provision and a severability clause where an employee of the named insured sued the additional insured for injuries sustained on the job.  The Court of Appeals found that in light of <u>PMA</u> it was "constrained to affirm" the district court's finding that the employee injury exclusion barred additional insureds from receiving coverage when the named insured's employee was injured, and that the severability clause did not alter this finding.  <u>Brown & Root Braun</u>, 54 Fed. Appx. at 544.

The severability provision in the contract in <u>Brown & Root Braun</u> differed from the severability provision in <u>PMA</u> and instead mirrored the separation of insureds provision in the contract at issue here.  The policy provided that the insurance applied "[a]s if each Named Insured were the only Named Insured" and "[s]eparately to each insured against whom claim is made or 'suit' is brought", Brief of Appellants at 6 <u>Brown & Root Braun, Inc. v. Bogan, Inc.</u>, 54 Fed. Appx. 542 (3d Cir. 2002) Nos. 00-4261, 01-1083, 2002 WL 32130797 at *6.

The appellants sought to distinguish the "antiquated" severability clause in <u>PMA</u> from this "modern" severability clause, arguing that "the 'modern' severability clause would change the interpretation of the employee injury exclusion provision so that 'insured' would refer to whichever party was seeking coverage, and not always the primary purchaser of the policy . . . ." <u>Brown & Root Braun</u>, 54 Fed. Appx. at 548.  Thus, they contended, when an additional insured sought coverage, the employee injury exclusion would not apply if the injured party was not an employee of the additional insured, but only of the named insured.  The Court of Appeals rejected the argument that this difference demanded a departure from <u>PMA</u>: "We do not find the wording of the two severability clauses significantly different.  At all events, we are

16

bound by the holding of the Pennsylvania Supreme Court in <u>PMA</u> unless we find that the severability clause in the Home policy is distinguishable, and we do not", <u>id.</u>

In reaching this conclusion, our Court of Appeals declined the appellants' invitation to rely on <u>Luko v. Lloyd's London</u>, 573 A.2d 1139 (Pa. Super. Ct. 1990).  In <u>Luko</u>, two companies -- Independent Pier Company and Independent Terminal Company -- were both named insureds under a policy that included an employer's liability exclusion.  The policy also included a severability clause which provided that "[t]he insurance afforded applies separately to each insured against whom claim is made or suit is brought . . . ." <u>Luko</u>, 573 A.2d at 1144. When Luko, an Independent Pier Company employee, sued Independent Terminal Company for an injury he sustained on the job, the insurer argued that it was not obliged to provide coverage for Independent Terminal Company because of the employer's liability exclusion.  The trial court rejected this argument, and the Pennsylvania Superior Court affirmed on the ground of an endorsement to the policy (not relevant here), but it explained in <u>dicta</u> that even if it had not relied on that endorsement Independent Terminal Company would still be entitled to coverage because of the severability clause.  The court reasoned that because "Luko is not an employee of Independent Terminal Company", the severability clause "provides for coverage of Luko's injury with respect to Independent Terminal Company, the entity against whom Luko seeks to collect damages." <u>Id.</u>  The court distinguished the case from <u>PMA</u> on the ground that there the Pennsylvania Supreme Court had "interpreted a standard automobile liability policy and concluded that the clear and unambiguous policy language excluded employees of the insured. This holding has no application to a case where, as here, the clear language of the policy does provide coverage for employees." <u>Id.</u>

In declining to rely on <u>Luko</u> our Court of Appeals reasoned that "<u>Luko</u> does not distinguish the 'modern' severability clause from the severability clause in <u>PMA</u>", and so was "bound to follow the controlling Pennsylvania Supreme Court precedent in <u>PMA</u>."  <u>Brown & Root Braun</u>, 54 Fed. Appx. at 549.

Like the appellants in <u>Brown & Root Braun</u>, Ramara urges us to rely on a decision in which an intermediate state court declined to follow <u>PMA</u> where an insurance contract contained both an employer liability exclusion and a separation of insureds provision, <u>Mutual Benefit Ins. Co. v. Politopoulos</u>, 75 A.3d 528 (Pa. Super. Ct. 2013).  In <u>Politopoulos</u>, the trial court found that in spite of a separation of insureds provision -- which is identical to the separation of insureds provision in <u>Brown & Root Braun</u> and the language here -- <u>PMA</u> controlled, and so the employer exclusion clause operated to deny coverage to an additional insured where an employee of the named insured was hurt on the job and sued the additional insured.  The Superior Court reversed, finding that <u>PMA</u> did not control.  The Superior Court pointed to the distinction between the severability clause in <u>PMA</u> and the separation of insureds provision <u>Politopoulos</u> policy -- the very distinction our Court of Appeals found to be without a difference in <u>Brown & Root Braun</u>.  The Superior Court concluded,

> Of controlling importance . . . is the divergence between the wording of the 'severability clause' at issue in <u>PMA</u> and the parallel clause in the case <u>sub judice</u> . . . In <u>PMA</u>, the clause in question provided that 'the term "the insured" is used severally and not collectively,' a somewhat vague formulation . . .
>
> In this case, the Umbrella Policy's severability clause is worded far more particularly . . .
>
> . . .
>
> While this resembles a severability clause indicating that coverage applies 'severally' to numerous insureds rather than 'jointly,' the clause before us speaks with greater precision.  Moreover, the

> clause prescribes a heuristic device to frame the interpretation of
> the policy: When determining coverage as to any one insured, the
> policy must be applied as though there were only one insured, i.e.,
> the one as to which coverage is to be determined.

Politopoulos, 75 A.3d at 535-36.

Politopoulos also noted a distinction between the relationships of the parties in that case and PMA -- the additional insureds in Politopoulos, as here, were included as such by virtue of a contract with the named insured, which came about "presumptively in a bargained for exchange." Id. at 535 n.6. The Superior Court contrasted this circumstance with the source of additional coverage in PMA -- an "omnibus clause" which "often, if not always, has no role in the design of the insurance contract. Rather, the omnibus clause either is included as a standard provision or is negotiated between the named insured and the insurer." Id. Here, as in Politopoulos, the Policy covers Ramara as an additional insured because of the Agreement, which required Fortress to name it as such.

There is no question that if PMA controls in this case we must follow the Pennsylvania Supreme Court's lead. See, e.g., McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 662 (3d Cir. 1980) ("The primary source that must be analyzed of course [when interpreting state law] is the decisional law of the [state] Supreme Court"). See also Microvote Corp. v. Montgomery County, 942 F. Supp. 1046, 1049 (E.D. Pa. 1996) (Bartle, J.) (where "there is a decision of the Supreme Court of the Commonwealth which is directly on point, we are bound by that decision . . . even if the precedent is old" and "even if we think that the state Supreme Court would change its mind were it ever to revisit the subject"). But in determining whether PMA controls, we are faced with the question of which source to look to in interpreting state law. Our Court of Appeals found, in an unpublished decision in 2002, that PMA does

control the factual scenario before us; the Pennsylvania Superior Court found that it does not.[4]

Both sources are persuasive in how to interpret state law but neither is binding.  McKenna, 622

F.2d at 662. ("Of somewhat less importance to a prognostication of what the highest state court

will do are decisions of lower state courts and other federal courts.  Such decisions should be

accorded 'proper regard' of course, but not conclusive effect.").

        We agree with the reasoning in Politopoulos that PMA -- which dealt with a

severability provision where the additional insured was covered by an omnibus clause in a car

insurance policy -- does not control where, as here, the additional insured is covered by virtue of

a contract requiring coverage and where the separation of insureds clause contains language

providing for an analytical framework whereby we are to consider each insured as if it is the only

insured.  Indeed, a very recent decision by our Court of Appeals, Arcelormittal Plate, LLC v.

Joule Technical Services, Inc., -- Fed. Appx. --, No. 13-1212, 2014 WL 595809 (3d Cir. Feb. 18,

2014), bolsters our conclusion.  In Arcelormittal Plate the Third Circuit explained that under

New Jersey law a severability clause would operate to render moot an employer liability

exclusion in a case such as the one before us.  The Court mentioned in dicta that in light of

Politopoulos Pennsylvania law might accord with New Jersey law on this point.  According to

our Court of Appeals, Politopoulos "suggests that PMA, although still good law, may not control

in cases where the policy contains a severability clause distinguishable from that in PMA."  Id. at

*4.  Although the Court took "no position at this time as to whether Politopoulos is an accurate

reflection of Pennsylvania law as it would be decided by the Supreme Court of the

---

[4] This problem is, as Professor Corbin long ago noted, endemic under the legal  universe Erie
R.R. Co. v. Tompkins, 304 U.S. 64 (1938), ordained:  "When the rights of a litigant are
dependent on the law of a particular state, the court of the forum must do its best (not its worst)
to determine what that law is.  It must use its judicial brains, not a pair of scissors and a paste
pot."  Arthur L. Corbin, The Laws of the Several States, 50 Yale L.J. 762, 775 (1941).

Commonwealth", <u>id.</u> at *5, the Court's suggestion that <u>Politopoulos</u>'s analysis might be correct bolsters our conclusion that <u>PMA</u> does not apply here.

We thus find that there is no Pennsylvania Supreme Court case directly on point, and, in predicting how the Pennsylvania Supreme Court would rule, we find <u>Politopoulos</u> a persuasive predictor of Pennsylvania law.

In keeping with the analysis in <u>Politopoulous</u>, and in light of the separation of insureds provision here, we apply the policy as if there were only one insured, Ramara.  Because Axe was not an employee of Ramara, the employer's liability exclusion does not apply.

Westfield has thus failed to meet the burden it bears in moving to dismiss on this ground.

     C.    <u>The Policy's Umbrella Coverage Part</u>

Westfield argues that "Plaintiff would not be entitled to coverage under the umbrella coverage portion of the Policy" for "substantially the same reasons", Def. MTD at 10, Westfield argued it was not entitled to coverage above.  Because we rejected Westfield's arguments, we do not consider them separately with regard to the umbrella coverage.

**V.    <u>Conclusion</u>**

For the reasons stated herein, we will deny Westfield's motion to dismiss.

BY THE COURT:

<u>/S/ STEWART DALZELL, J.</u>

21