**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| **RAMARA, INC.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | **No. 13-7086** |
| **v.** | : | |
| | : | |
| **WESTFIELD INSURANCE COMPANY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

---

**MCHUGH, J.**                                         **NOVEMBER 24, 2014**

<u>**MEMORANDUM**</u>

This matter involves cross motions for summary judgment in an insurance coverage dispute.  Plaintiff Ramara, Inc. ("Ramara") is a business owner seeking coverage for an underlying personal injury lawsuit, brought by the employee of a subcontractor working on its property.  Ramara's Complaint consists of two counts: (1) declaratory judgment regarding Westfield's duty to defend and/or indemnify Ramara with respect to a personal injury lawsuit brought by Anthony Axe (the "underlying complaint"); and (2) breach of contract.

On March 10, 2014, Judge Dalzell denied Defendants' Motion to Dismiss in a comprehensive and thoughtful opinion.  <u>Ramara, Inc. v. Westfield Ins. Co.</u>, 298 F.R.D. 219, 220 (E.D. Pa. 2014) (confronting many of the same legal issues currently before this Court).  Plaintiff now moves for partial summary judgment as to Westfield Insurance Company ("Westfield"), the carrier that issued the policy in question.  Defendants[1] Westfield and Fortress Steel Service ("Fortress") oppose Ramara's motion and cross-move for summary judgment.

---

[1] Ramara's Complaint notes that the other parties, Sentry, Fortress and Anthony Axe, the injured worker, were also named as defendants "only to the extent that they may have an interest in Ramara's claim and may be considered

## I.      Background

There is nothing unusual about the facts of the underlying tort case.  Ramara, owner of a parking garage, hired a general contractor to perform work on its property, which in turn hired a subcontractor, whose employee was then injured on the premises, giving rise to a claim against Ramara.

Specifically, Ramara hired Sentry Builders Corporation ("Sentry") to perform the work in question.  On or about February 22, 2014, Sentry and Fortress Steel Services, Inc. ("Fortress"), entered into a written letter agreement ("the Agreement") providing for the installation of certain concrete and steel components by Fortress at Ramara's parking garage.  Ramara Compl. at ¶¶ 11–12.  Fortress agreed to provide all necessary labor and equipment required to "perform the work in a workman-like manner and in accordance with the acceptable standard of the trade," and to supervise the project until its completion.  Id. at ¶¶ 13–14.  The Agreement stipulated that "Sentry Builders Corporation and or Ramara, Inc. will NOT be responsible for the procedures or actions of Fortress Steel in its performance or deliveries to complete the work."  Id. at ¶ 16.

The Agreement further provided that "Fortress Steel will before commencement of work provide Sentry Builders Corp. insurance for Workmen's Compensation and General Liability with the appropriate limits of coverage, said certificate(s) of insurance shall also include the landlord Ramara, Inc. as additional insured."  Id. at ¶ 17 and Exhibit B.  A Certificate of Liability Insurance was issued by or on behalf of Westfield showing Fortress as the named insured under a Westfield Insurance Group policy providing $1 million of primary liability coverage per occurrence and $9 million of umbrella coverage.  Id. at ¶ 18.  Ramara and Sentry are listed as additional insureds under a typewritten section of the certificate entitled "Description of

---

indispensable parties."  Ramara Compl. at ¶ 8.  In resolving a motion to remand filed by Ramara, Judge Dalzell realigned Axe as a plaintiff, allowing for complete diversity in this case.  Ramara, Inc., 298 F.R.D. at 220.

Operations/ Locations / Vehicles."  Id. at ¶ 18 and Exhibit C.  The typewritten section reads:
"RE: Project 444 City Avenue – Additional Insureds include Ramara Inc. and Sentry Builders
with regard to above referenced project."  Id.

Anthony Axe, a Fortress employee, was injured in April of 2012 during the course of the
job, and filed a lawsuit in the Philadelphia County Court of Common Pleas against Ramara, as
the owner of the property, and Sentry, as the general contractor, but not against his employer,
Fortress, which is immune from suit pursuant to Pennsylvania's Workers' Compensation Act.
See 77 Pa. Cons. Stat. Ann. §  481 ("The liability of an employer under this act shall be
exclusive and in place of any and all other liability.").  The claims asserted by Axe in the
underlying case are characteristic of the claims typically filed in worksite accidents.

The Commercial Umbrella Liability Declarations page of the Commercial Insurance
Coverage policy issued by Westfield to Fortress ("the Policy") indicates $1 million per
occurrence limits and $9 million general aggregate limits.  Ramara's Motion for Partial
Summary Judgment at Exhibits C–E.  Given that Ramara was specifically listed as an additional
insured, it unquestionably expected that the coverage provided by Westfield would protect it
from bodily injury claims arising out of Fortress' work, such as those asserted in Axe's lawsuit.
See Ramara Compl. at ¶ 35.

Ramara has moved for partial summary judgment, and Westfield, joined by Axe's
employer,[2] has cross-moved for summary judgment.  Neither party has identified any material
factual dispute, and both contend that they are entitled to judgment as a matter of law pursuant to
Fed. R. Civ. P. 56(a).  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

---

[2] It is not apparent from the record why Fortress opted to join in Westfield's Motion for Summary Judgment.

II.     **Key Provisions of the Policy**

There are four provisions in the Policy and related documents that have been identified

by the parties as being of controlling importance.  First, "Additional Insured – Owners, Lessees

or Contractors – Automatic Status When Required in Construction Agreement With You" (the

"Additional Insured Endorsement") provides as follows, in relevant part:

> **A. Section II – Who Is An Insured** is amended to include as an additional
> insured any person or organization for whom you are performing operations when
> you and such person or organization have agreed in writing in a contract or
> agreement that such person or organization be added as an additional insured on
> your policy.  Such person or organization is an additional insured only with
> respect to liability for 'bodily injury,' 'property damage,' or 'personal and
> advertising injury' **caused, in whole or in part, by**:
>
> > 1. Your acts or omissions; or
> >
> > 2. The acts or omissions of those acting on your behalf;
>
> in the performance of your ongoing operations for the additional insured.
>
> A person's or organization's status as an additional insured under this
> endorsement ends when your operations for that additional insured are completed.

Plaintiff's Motion for Partial Summary Judgment at Exhibit F; Defs. Ans. to Compl. at ¶ 56

(emphasis added).  Defendants use this paragraph to argue that in order for Ramara to qualify as

an additional insured under the Policy, the underlying complaint must explicitly allege that Axe's

injuries were proximately caused by Fortress' acts or omissions.

Plaintiff responds that the Policy's "Other Insurance Endorsement," set out in relevant

part below, directly conflicts with Defendants' interpretation of the key language in the

Additional Insured Endorsement, and as such cannot be reconciled with the totality of the

contract.  The Other Insurance Endorsement provides:

> When required by written contract with any additional insured owner, lessee, or
> contractor to provide insurance on a **primary and noncontributory basis**,

Condition **4.** Of Section **IV** – Commercial Liability Conditions is deleted and replaced by the following:

**4. Other Insurance**

If other valid and collectible insurance is available for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

    **a.  Primary Insurance**

This insurance is primary and non-contributory except when **b.** below applies.

    **b.  Excess Insurance**

This insurance is excess over any of the other insurance, . . .

        (4) If the loss is caused by the **sole negligence of any additional insured** owner, lessee, or contractor.

Plaintiff's Motion for Partial Summary Judgment at Exhibit G (emphasis added); Defs. Response in Opposition to Plaintiff's Motion for Partial Summary Judgment at ¶ 18.  Defendants counter that because there is no written contract providing additional insured coverage to Ramara on a "primary and noncontributory" basis, this provision is entirely inapplicable to the instant dispute. Plaintiff, however, maintains that the Policy should be construed in its entirety, to give meaning to all of its different provisions.  Specifically, Ramara contends that when the contract is analyzed as one comprehensive document, the carrier's interpretation of the Additional Insured Endorsement would in effect moot the Other Insurance Endorsement altogether.  In other words, if Defendants' interpretation is accepted, there could never be coverage under the Other Insurance Endorsement, which is inconsistent with the plain terms of the full contract.

Another source of disagreement among the parties, the "Employer's Liability Exclusion," reads as follows:

### 2. Exclusions

This insurance does not apply to: . . .

### e. Employer's Liability

'Bodily Injury' to:

**(1)** An 'employee' of the insured arising out of and in the course of:

> **(a)** Employment by the insured; or

> **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that 'employee' as a consequence of Paragraph **(1)** above.

Plaintiff's Motion for Partial Summary Judgment at Plaintiff's Motion for Partial Summary Judgment at Exhibit D; Defs. Ans. To Compl. ¶ 54.  Defendants argue that because Axe's injury arose out of and in the course of his employment with Fortress, the named insured, there is no additional insured coverage available to Ramara.[3]  Plaintiff, however, relies heavily on the following provision found in the Policy under "Separation of Insureds":

### 7. Separation of Insureds

Except with respect to the Limits of Insurance, and any rights to duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

> a.  As if each Named Insured were the only Named Insured; and
> b.  Separately to each insured against whom claim is made or 'suit' is brought.

<u>See</u> Plaintiff's Motion for Partial Summary Judgment at Exhibit D.  Plaintiff relies on this language to argue that if the Policy were to be analyzed as if each named insured is the

---

[3] There is no small degree of irony in Defendants' position.  For purposes of this portion of their argument, they suggest that Fortress is responsible for Axe's injuries, reversing position later in arguing that Axe's complaint in the underlying personal injury action does not adequately allege liability on Fortress' part.

*only* insured, then Defendants' argument regarding the Employer's Liability Exclusion fails.

Given the parties' conflicting interpretations of the key provisions of the Agreement, I turn to the case law for guidance.

## III.    Discussion

Ramara moves for summary judgment seeking the following declarations pursuant to the Declaratory Judgment Act, 42 Pa.C.S. § 7531: (1) the factual averments in the underlying complaint trigger Westfield's duty to defend Ramara; (2) the Employer's Liability Exclusion and other exclusions contained in the Policy do not preclude coverage; and (3) Westfield also has a duty to defend Ramara under the umbrella part of the Policy.  Conversely, Defendants move for summary judgment in pursuit of a declaration that Westfield has no duty to defend or indemnify Ramara in the underlying lawsuit, and judgment should accordingly be entered in favor of the defense.

### a.    Does Westfield have a duty to defend Ramara?

Judge Dalzell noted that "the Policy's definition of an 'additional insured' is co-extensive with Westfield's duty to defend and thus the real question is whether Axe's complaint triggers that duty."  Ramara, Inc., 298 F.R.D. at 223.  I agree and find that the allegations in the underlying complaint do indeed trigger the duty to defend under both interpretations of the Additional Insured Endorsement advanced by the parties.

In Erie Ins. Exch. v. Transamerica Ins. Co., 516 Pa. 574, 583, 533 A.2d 1363, 1368 (1987), the Supreme Court of Pennsylvania explained when the duty to defend is triggered.

> [O]ur cases have held that the obligation to defend arises whenever the complaint filed by the injured party may *potentially* come within the coverage of the policy. (Emphasis in original.)  *Gedeon v. State Farm Mutual Automobile Insurance Co.,* 410 Pa. 55, 188 A.2d 320 (1963).  If the complaint filed against the insured avers facts which would support a recovery that is covered by the policy, it is the duty

of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover. *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959).

In reviewing whether an insurance company has a duty to defend, I must view the factual allegations of the underlying complaint as true and "liberally construed in favor of the insured." Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999) (citing Biborosch v. Transamerica Ins. Co., 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)). The specific cause of action pleaded is not determinative regarding coverage; it is instead necessary to look to the factual allegations in the complaint. Erie Ins. Exch. v. Muff, 851 A.2d 919, 926 (Pa. Super. Ct. 2004); Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 606 Pa. 584, 609, 2 A.3d 526, 541 (2010) ("An insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy.").

Viewing the facts in the complaint as true, the insurer is obligated to defend if the policy *potentially* applies. Am. Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985) (applying Pennsylvania law); Stidham v. Millvale Sportsmen's Club, 618 A.2d 945, 953–54 (Pa. Super. Ct. 1992) ("If coverage (indemnification) depends upon the existence or nonexistence of undetermined facts outside the complaint, until the claim is narrowed to one patently outside the policy coverage, the insurer has a duty to defend claims against its insured."); D'Auria v. Zurich Ins. Co., 507 A.2d 857, 859 (Pa. Super. Ct. 1986). In fact, the insurer has a duty to defend even if it is unclear whether the policy covers the claim as long as there's a possibility of coverage. Am. & Foreign Ins. Co, 606 Pa. at 609 ("As long as the complaint might or might not fall within the policy's coverage, the insurance company is obliged to defend. . . . [I]t is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.") (internal citation and quotation omitted).

8

Perhaps more importantly, "the duty to defend is not limited to meritorious actions; it even extends to actions that are 'groundless, false, or fraudulent' as long as there exists the possibility that the allegations implicate coverage." Am. & Foreign Ins. Co., 606 Pa. at 610; Erie Ins. Exch. v. Transamerica Ins. Co., 516 Pa. at 583.

The interpretation of an insurance contract is a question of law for the Court. 401 Fourth St., Inc. v. Investors Ins. Grp., 583 Pa. 445, 453, 879 A.2d 166, 170 (2005). I must resolve any doubts regarding the insurer's duty to defend in favor of the insured. Selective Ins. Co. of S. Carolina v. Lower Providence Twp., No. 12-0800, 2013 WL 3213348, at *8 (E.D. Pa. June 26, 2013); Western World Ins. Co. v. Reliance Ins. Co., 892 F.Supp. 659, 662 (M.D. Pa. 1995). If any provision of an insurance policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 331, 908 A.2d 888, 897 (2006).

Here, the four corners of the insurance policy and the four corners of the underlying complaint dictate whether the factual averments in the underlying action trigger Westfield's duty to defend Ramara. See Am. & Foreign Ins. Co, 606 Pa. at 609. Defendants rely on Dale Corp. v. Cumberland Mut. Fire. Ins. Co., No. 09-1115, 2010 WL 4909600 (E.D. Pa. Nov. 30, 2010) to argue that the key Additional Insured Endorsement language, "caused, in whole or in part, by," requires a showing that the named insured's (i.e., Fortress') acts or omissions proximately caused Axe's injuries in order to trigger coverage. Defendants contend that because the underlying complaint does not include specific allegations that Fortress caused Axe's injuries, there is no additional insured coverage available. Plaintiff counters with two responses. First, Plaintiff argues that Dale should not control here, because Pennsylvania courts have not yet spoken, and

the test applied in <u>Dale</u> is more restrictive than Pennsylvania would likely adopt.  In that vein, Plaintiff argues that a lesser showing of "but for" causation will suffice.  Under that prong of its argument, Plaintiff also notes that Judge Dalzell found <u>Dale</u> distinguishable on its facts.  <u>Ramara, Inc.</u>, 298 F.R.D. at 224.  Second, Plaintiff argues that even under a "proximate" or "legal" cause standard, the allegations against Fortress in the underlying complaint suffice to trigger coverage.

Before engaging in an analysis regarding proximate cause, I must first note that Ramara is correct that the key language in the Additional Insured Endorsement is not easily reconciled with the Other Insurance Endorsement, which establishes that an additional insured can receive excess coverage for a loss caused by its sole negligence.  If I were to adopt Defendants' logic that the Additional Insured Endorsement requires a showing of proximate cause by the named insured, then this type of excess coverage could arguably be impossible to trigger.  That is, how could a loss caused by Ramara's *sole* negligence also be proximately caused by Fortress' acts or omissions?  Defendants argue that this potential conflict is irrelevant because the Policy does not insure Ramara on a primary and noncontributory basis, which is a condition precedent to triggering the Other Insurance Endorsement.  Plaintiff, however, contends that regardless of whether the conflict is directly applicable to the instant facts, "all provisions of an insurance contract must be read together and construed according to the plain meaning of the words involved, so as to avoid ambiguity while at the same time giving effect to all of its provisions." <u>Masters v. Celina Mut. Ins. Co.</u>, 224 A.2d 774, 776 (Pa. Super. Ct. 1966).

Construing the Policy in favor of Ramara, it certainly seems plausible that the language of the Additional Insured Endorsement and the Other Insurance Endorsement directly conflict and render the key excerpt from the Other Insurance Endorsement meaningless.  At a minimum, the language in these two endorsements is ambiguous and creates confusion.  Under

10

Pennsylvania law, if "the language of a policy prepared by an insurer is either ambiguous, obscure, uncertain or susceptible to more than one construction, we must construe that language most strongly against the insurer and accept the construction most favorable to the insured." Blocker v. Aetna Casualty & Surety Co., 332 A.2d 476, 478 (Pa. Super. Ct. 1975).  Accordingly, here, the insured's interpretation of the Policy should control in the face of ambiguity.

Moreover, as Ramara points out, Westfield could have explained the inconsistency between the two endorsements as the drafter of the Policy if it did not intend the Policy to be understood by reading the various provisions together.  Thus, given that I must draw all inferences in favor of the insured if the Policy is susceptible to more than one interpretation, I am inclined to adopt Ramara's construction of the key provisions.

It is ultimately unnecessary to resolve the parties' dispute as to the meaning of "caused, in whole or in part, by," because, even adopting Defendants' more restrictive interpretation, I conclude that Westfield still has a duty to defend Ramara.  As already explained by Judge Dalzell at the Motion to Dismiss phase of this case, Pennsylvania courts have not yet interpreted the key language "caused, in whole or in part, by."  Ramara, Inc., 298 F.R.D. at 224.  However, in Dale, our colleague Judge O'Neill found that coverage exists so long as the underlying complaint adequately pleads proximate cause.  2010 WL 4909600, at *7.[4]

"The articulated standard for determining legal or proximate cause is whether the alleged wrongful acts were a substantial factor in bringing about the plaintiff's harm."  E.J. Stewart, Inc. v. Aitken Products, Inc., 607 F. Supp. 883, 889 (E.D. Pa. 1985) (citing Restatement (Second) of

---

[4] Various courts have analyzed the same or similar contractual language and reached varying results.  I see no unifying principles in the holdings from this line of cases, because, as another district judge has cogently observed, they "all involve factual circumstances different from each other and from the facts presented here."  Thunder Basin Coal Co. v. Zurich Am. Ins. Co., 943 F. Supp. 2d 1010, 1015 (E.D. Mo. 2013) (citing, as an example, Dale Corp., 2010 WL 4909600).

Torts § 431 (1965)).  Legal cause is a limiting principle, essentially a policy determination, as to "whether the defendant's conduct although a cause in the 'but for' sense is so insignificant that no ordinary mind would think of it as a cause for which a defendant should be held responsible." Ford v. Jeffries, 474 Pa. 588, 594–95, 379 A.2d 111, 114 (1977).

Ramara claims that the underlying complaint is "replete with averments that evidence a theory of vicarious liability, thereby operating to extend coverage to Ramara."  Plaintiff's Brief in Support of Partial Summary Judgment at 13.  Specifically, Ramara relies on allegations that Axe was an employee of Fortress at the time of the incident, and Fortress was a contractor for Sentry.  See Exhibit A to Plaintiff's Brief in Support of Partial Summary Judgment at ¶ 14.  The underlying complaint further alleges that Axe was severely injured when he fell through an opening in the garage deck while attempting to set beam clips, and he was required to access the garage deck as part of his normal job duties.  Id. at ¶¶ 19–20.

Other relevant allegations in the underlying complaint include the contention that Ramara, as the owner of the project, was responsible for the inspection and supervision of the work performed, which would include the work done by Fortress.  Axe pleaded that Ramara was "acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency, service and/or employment with Ramara," and Fortress was its subcontractor.  Id. at ¶ 3.  Axe further averred that Ramara "employed and/or retained, or [was] obligated to employ field personnel, project supervisors and safety inspectors to inspect the work being performed and the equipment materials utilized by contractors and subcontractors at the project," and work done by Fortress would fall within the scope of such supervision.  Id. at ¶ 21. Finally, Ramara relies on Axe's allegations that Ramara was negligent because it failed to (1) supervise the construction work; (2) hire competent contractors and subcontractors; and (3)

perform construction services in conformity with the construction industry's standard of care. Id. at ¶ 40(a)–(v).

Ramara argues that these allegations, taken together, demonstrate that Axe was injured during the normal scope of his employment duties with Fortress, and that Plaintiff has pleaded a vertical chain running from Ramara down through Fortress, potentially supporting recovery. Perhaps less convincingly, Ramara argues that the underlying complaint supports a possible theory of liability under the peculiar risk doctrine in the specific context of independent contractors.[5]  The issue before me is not whether Axe will succeed on these claims, but whether the underlying complaint sufficiently alleges liability for injury "caused in whole or in part" by the acts or omissions of Fortress.  Liberally construing those allegations in favor of the insured, I conclude that the complaint sufficiently pleads both negligence and legal cause arising out of conduct attributable to Fortress, giving rise to a duty on the part of Westfield to defend Ramara as an additional insured.  Because I find that the duty to defend is triggered under the more restrictive "proximate/legal" cause interpretation of the Policy, it follows that the duty to defend would also be triggered under the broader "but for" standard advanced by Plaintiff.

Defendants further argue that the underlying complaint merely alludes to the acts or omissions of Fortress, without directly naming Fortress as a defendant or pleading that Fortress was an agent or employee of Ramara.  Defendants reason that the underlying complaint is, in effect, "plainly silent as to any acts or omissions by Fortress. . . . Since Ramara has failed to establish that Axe alleges any bodily injury 'caused, in whole or in part' by any acts or omissions

---

[5] The peculiar risk doctrine is "applicable only to situations in which the negligence of the independent contractor consists of the failure to take the precautions necessary for the safe performance of a task."  McDonough v. U. S. Steel Corp., 324 A.2d 542, 546 (Pa. Super. Ct. 1974).  In general, an injury resulting from a fall at a construction site does not constitute the type of injury that differs from those associated with the usual and ordinary risks characteristic of construction work.  See Litvin & McHugh, Pennsylvania Torts, Sections 410, 411 (West/Thompson Reuters, 1996; Supp. 2014).

of Fortress, Ramara does not qualify as an additional insured."  Brief of Defendants in

Opposition to Plaintiff's Motion for Partial Summary Judgment at 11.  Defendants conclude that

without a showing of causation under the Additional Insured Endorsement, "Westfield would be

providing a defense to an entity that is not insured."  Id.

      Defendants' position ignores the realities of the worksite, the corresponding public policy

that creates employer immunity, and the realities of construction injury litigation.  Defendants do

not dispute that Fortress employed Axe at the time of his injury or even seriously challenge

Ramara's assumption that it would be covered for this type of accident.  Defendants' narrow

analysis of the legal issues ignores the effect of the Pennsylvania Workers' Compensation Act,

which prevents Axe from naming his employer as a defendant in the underlying suit.

      Confronting the same issue in Selective Ins. Co. v. Lower Providence Twp., 2013 WL

3213348, at *10, n. 6 (E.D. Pa. June 26, 2013), Judge Buckwalter of this Court explained:

> The purpose behind [the four corners rule] is that an insurer should not be
> required to defend a claim when it is apparent on the face of the complaint that
> none of the injuries fall within the purview of the insurance policy.  Given the
> circumstances of this case, that purpose would not be well served by blindly
> following Plaintiff's insistence that the Court apply the most restrictive
> interpretation of the four corners rule.  Due to the immunity conferred by the
> Workmen's Compensation Act, Mr. Roberto could not have sued his employer,
> Lawn Rangers, and, thus, would not have included any allegations about Lawn
> Rangers in his underlying complaint.  Nonetheless, Selective Insurance has
> expressly stipulated that it knew Mr. Roberto was injured while performing duties
> on a job site in the scope of his employment with Lawn Rangers. . . .  Given
> Selective's obvious knowledge of the existence of facts that could trigger
> coverage and its awareness of Roberto's reason for not including them, it would
> be both illogical and unjust for this Court to find that Selective's duty to defend
> was not triggered.

In similar fashion, Axe pleaded that his injuries were sustained when accessing a garage

deck as part of his normal duties at the job site.  Although Fortress itself is not a

cognizable defendant in the underlying matter due to the constraints of the Workers'

Compensation Act, Axe's fall and resultant injuries were without question related to the risks of construction work. The underlying complaint includes allegations that such injuries were caused "in whole or in part, by" the nature of Axe's job responsibilities, and, in essence, by the acts or omissions of Fortress.

The purpose of the Pennsylvania Workers' Compensation Act is clear: it limits an employer's tort exposure and grants employees a statutory remedy for all work related injuries. <u>Snyder v. Pocono Med. Ctr.</u>, 656 A.2d 534, 536 (Pa. Super. Ct. 1995) <u>aff'd</u>, 547 Pa. 415, 690 A.2d 1152 (1997). "In exchange for the right to compensation without the burden of establishing fault, employees gave up their right to sue the employer in tort for injuries received in the course of employment. An employer must assume liability under the Act regardless of fault in exchange for insulation from a potentially larger verdict in a common law action." <u>Id.</u> (internal citations and quotations omitted). As recognized by Defendants, coverage under the Workers' Compensation Act expressly does not speak to fault. Brief of Defendants in Opposition to Plaintiff's Motion for Partial Summary Judgment at 16. The legislature's interests in protecting employers from a full measure of tort damages while ensuring employees are compensated for workplace injuries do not conflict with an additional insured's right to coverage. Given that workers' compensation benefits represent a compromise—automatic coverage regardless of fault in return for medical coverage and partial wage replacement—it is not surprising that injured workers seek a fuller measure of compensation from non-immune parties. In turn, it is not surprising that third parties potentially subject to claims arising out of construction demand coverage from the contractors they hire. Ramara's request that it be

protected as an additional insured under Fortress' policy comports with the normal conventions of construction contracts.

"[T]he parties' reasonable expectations are to be the touchstone of any inquiry into the meaning of an insurance policy." Bensalem Township v. International Surplus Lines, Ins. Co., 38 F.3d 1303, 1309 (3d Cir. 1994). Although the language of the policy normally provides the best indication of the parties' reasonable expectations in forming the contract, the totality of the insurance transaction must be examined to ascertain the reasonable expectations of the insured. Reliance Ins. Co. v. Moessner, 121 F.3d 895, 903 (3d Cir. 1997), as amended (Aug. 28, 1997). In ascertaining the intent of the parties, consideration must be given to any reasonable expectation the insurer created in the insured during the negotiation process. Med. Protective Co. v. Watkins, 198 F.3d 100, 106 (3d Cir. 1999). "Through the use of lengthy, complex, and cumbersomely written applications, conditional receipts, riders, and policies, to name just a few, the insurance industry forces the insurance consumer to rely upon the oral representations of the insurance agent," allowing the insurer to "reap the benefit of the insured's lack of understanding of the transaction." Tonkovic v. State Farm Mut. Auto. Ins. Co., 513 Pa. 445, 456, 521 A.2d 920, 926 (1987). As a result, even the "most clearly written" provisions of a policy will not bind an insured where an insurer has improperly created a reasonable expectation in the insured that coverage will exist for a particular type of loss. Med. Protective Co., 198 F.3d at 106–07. To bar coverage, policy limitations must be "clear and unambiguous." Frain v. Keystone Ins. Co., 640 A.2d 1352, 1354 (Pa. Super. Ct. 1994).

This case involves precisely the type of lengthy, complex, and cumbersomely written documents contemplated by Pennsylvania case law in urging courts to safeguard the "purchasing public's reasonable expectations." See Tonkovic, 513 Pa. at 456, 521 A.2d at 926. The specific inclusion of Ramara as an additional insured on Fortress' policy, and the ambiguous and potentially contradictory insurance provisions, strongly favor the conclusion that coverage exists. The totality of the transaction makes clear that Ramara intended to seek coverage for the type of injury suffered by Axe, and Westfield purported to expand the Policy to include the specific project at Ramara's garage on the day in question. If I were to hold that the injuries suffered by Ramara's subcontractors' employees—physically present and working at its garage during the course of the "insured" project—did not in fact fall within the scope of the additional insured coverage, then Ramara's reasonable expectation of insurance coverage would be entirely defeated. No purpose is served by drawing a narrow line to defeat Ramara's right to coverage merely because Fortress could not be named as a defendant in Axe's complaint. Such an absurd result could only create bad policy and muddled case law.

### b. Is Coverage precluded by the Employer's Liability Exclusion?

As explained by Judge Dalzell in his March 10, 2014 memorandum opinion, coverage is not precluded by the Employer's Liability Exclusion: "In keeping with the analysis in *Politopoulos*, and in light of the separation of insureds provision here, we apply the policy as if there were only one insured, Ramara. Because Axe was not an employee of Ramara, the employer's liability exclusion does not apply." Ramara, Inc., 298 F.R.D. at 226–229 (citing Mut. Ben. Ins. Co. v. Politopoulos, 75 A.3d 528 (Pa. Super. Ct. 2013), reargument denied (Nov. 6,

2013), appeal granted in part,[6] 95 A.3d 268 (Pa. 2014)).  There is nothing meaningful to add to

Judge Dalzell's comprehensive analysis of this issue and thus no reason to revisit it at this stage

of the litigation.

      *c.   Is Ramara entitled to coverage under the Policy's umbrella policy?*

As both parties acknowledge that the umbrella coverage is a "follow form" policy,

providing the same scope of coverage as the underlying insurance, there is no reason to analyze

that policy.  Kropa v. Gateway Ford, 974 A.2d 502, 506 n.2 (Pa. Super. Ct. 2009) ("A following

form policy has the same terms and conditions as the primary policy, but has a different liability

limit.").  Consequently, Westfield has a duty to defend Ramara pursuant to the Policy's umbrella

coverage for the same reasons identified above.

      *d.   Is Westfield liable for breach of contract and counsel fees and costs?*

Pennsylvania law is clear that the failure to defend a claim within the scope of an

insurance policy constitutes a breach of contract, regardless of whether the insurer acts in good

faith.  See Rector, Wardens & Vestrymen of St. Peter's Church in City of Philadelphia v. Am.

Nat. Fire Ins. Co., 97 F. App'x 374, 378 (3d Cir. 2004) (citing Vanderveen v. Erie Indem. Co.,

417 Pa. 607, 208 A.2d 837, 838 (1965) ("An insurer's failure or refusal to defend a claim within

the scope of an insurance policy constitutes a breach of contract for which it is subject to

damages recoverable in an action of assumpsit."); Gedeon v. State Farm Mut. Auto. Ins. Co., 410

Pa. 55, 59, 188 A.2d 320, 322 (1963) ("A refusal [to defend]  . . . gives rise to a cause of action

regardless of the good faith of the insurer."); NorFab Corp. v. Travelers Indem. Co., 555 F. Supp.

2d 505, 513 (E.D. Pa. 2008) ("Because it is undisputed that Travelers did not meet [its duty to

defend], we will also grant the motion of NorFab for summary judgment as to liability under

---

[6] Given that a partial appeal is currently under review by the Supreme Court of Pennsylvania, I offered to reserve judgment on the instant cross motions.  Counsel for both parties, however, indicated a preference to receive a ruling as soon as possible rather than wait until the Supreme Court has spoken.

Count II of its complaint for breach of contract.").  Thus, Westfield is liable for breach of

contract for its refusal to provide a defense to Ramara in the underlying action.

When an insurer erroneously denies its duty to defend, it must pay defense costs already

incurred.  Kiewit E. Co. v. L & R Const. Co., 44 F.3d 1194, 1205 (3d Cir. 1995) *(*citing

Heffernan & Co. v. Hartford Ins. Co. of Am.*,* 614 A.2d 295, 299 (Pa. Super. Ct. 1992)).  Fees

should be "awarded for services rendered from the time 'the duty to defend arose.'"  Id.

Accordingly, Westfield must pay any fees and costs incurred by Ramara's defense team in the

underlying action.  Additional briefing is required in order to ascertain the extent of expenses

incurred to date.[7]

### IV.    Conclusion

For the reasons stated above, Ramara's Partial Motion for Summary Judgment is granted,

and Defendants' Motion for Summary Judgment is denied.  An appropriate order follows.


_____ /s/ Gerald Austin McHugh
United States District Court Judge

---

[7] In light of my ruling, the choice-of-law issue raised by Ramara is moot and therefore does not need to be addressed
in this opinion.